Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to stand by and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated, please. All right, this morning we'll begin with the United States v. Gutierrez, and Mr. Aizel, I think we'll hear from you first. Good morning, honors, counsel for the government. On behalf of Mr. Gutierrez, we are thankful for the chance to argue for this court today. He is serving a 40-year sentence, a man with two criminal history points. And although Mr. Gutierrez, as he argues in the brief, believes that substantively he's entitled to compassionate release, the main thrust of our argument here today is to ask for another opportunity for the district court to have all of his arguments heard and to be stated on the record. As can be seen from the order of the district court, which takes up about one half of a page double spaced, almost no substance of Mr. Gutierrez's argument for the district court is contained in that order. There is no way to parse if any of those arguments were given any consideration whatsoever. So, we asked this court, based on its long-standing precedent, to find that there is procedural error because the court did not consider all of the arguments. Now, the government is quick to point out the high case. Counsel, I'm sorry, before we move off the order, may I ask you just, it's like a framing question. How do you understand the district court's holding in this order? Do you understand this paragraph to be doing a 3553A analysis and denying relief on that ground? Or did the district court find that there were no extraordinary and compelling circumstances? What exactly did the district court hold here? I will, Judge Harris, that's a fair question to be quite candid. I don't know. And that's part of the concern or frustration is the form order doesn't indicate what that paragraph is for. Is it for the initial threshold for extraordinary and compelling reasons? Or is it for the 3553A factors? And that's a joint appendix 329 if the court wishes to look at it. So, it's a quick read, but there's no way that I can discern. I know for, what I do know is that there is no mention of the substantive arguments for extraordinary and compelling reasons that I can see. And so, I'm not sure because if it's not there, Your Honor, it's not anywhere because there's no other substantive portion to the order. Everything else is a form and there's no other boxes checked that I can see except for where it says, check either defendant or director of the district court. And so, to answer your question, Your Honor, I don't know. And that's really gets to the crux of our argument. Your Honor, we're not asking for this court to even opine as to the substance. I know this court more recently, and again, they've been mainly in unpublished decisions has reversed for consideration under conception and the plethora of cases that have come down since this was decided by Judge Russell. And so, when we talk about wanting to uphold the courts from the client's perspective and from the public's perspective, procedural reasonableness is one of those things that really secures the ability to do that because it allows the district court to make its own substantive determinations, but it allows this court to find out the why. And that gives credit to this. Let me ask you this. The standard that's been given to us by the Supreme Court is basically to give us sufficient information to review what the district court did. And what I've taken from the presentation to the district court and what the district court said is that there was not a heavy argument made about the COVID and the health risks that the compassionate release motion was made on. I think the argument was really, this man has made substantial progress in rehabilitation. He has done a lot in that regard. And he's basically saying, I'm a different man and I committed a big crime. So, he's now, he had a 40-year sentence and he wants half his sentence released because he is a rehabilitated man. That's what I basically read the record to make. And what I saw the court doing is basically saying, I hear that. But as the state, not the state, the government said, basically, this is one of the most serious distribution crimes they've ever prosecuted in the state of Maryland. And that it was very significant. And there are a lot of arguments made about the sentence, going back and reviewing the sentence in this case. But I don't think that's the role under compassionate release. I think the compassionate release question is discretion balancing his grounds for being released against the sentence that was given him. And maybe I've oversimplified it, but tell me where I'm wrong on that. I sort of sensed that from this record, that the whole argument was, this is a new man, a rehabilitated man. And I'd like to have compassionate release exercise to me set free. Is that about it? Your Honor, I would agree with you on one point, that my client does say he's a rehabilitated man. I would respectfully disagree on the other point, because from a substantive matter on the extraordinary and compelling reasons for release, the vast majority of our motion and reply dealt with substantive arguments for extraordinary and compelling release, whether it be disparate sentences. Well, take me through that then. I thought he'd been vaccinated and conditions in prison were okay. And of course, we have a fading pandemic. And the questions at that time, it wasn't. Of course, it was in height. But it seemed to me that that wasn't pressed as hard as his point that he's done a lot to advance himself. And I think he should get credit for that. But ultimately, the question I suppose is, well, go ahead and make your point there. I might have misunderstood. Well, you don't misunderstand the sort of, I guess we'll say some of the equities in the case as far as his rehabilitation. So, I'll take that real quick. And this is why it's so important in comparison to high, which I would understand why the government utilizes that case a lot. But from an equity standpoint, from a factual standpoint, it couldn't be more dissimilar. Your Honor hit the standard right on the head as far as can this court make a determination of what the district court thought of our arguments for extraordinary compelling release and a final determination. And high does not diminish that in any way. High does not say that there is no procedural protections in compassionate release litigation. And in high, the gentleman had just been sentenced just, I want to say within a year. And he was already given a variance, and it was done by the same judge. And the court said, well, there's not really, literally hasn't anything has been changed. The facts couldn't be more dissimilar to my client who'd been, at the time he requested, not 16 months from being originally sentenced, but 16 years. He was not given a variance. His case was on the cusp of the Booker case. Well, that's on the merits. The question, you're making a procedural argument. And the question is, what was the standard in high? It was actually that language from the Supreme Court. Basically, what was the standard? Basically, the record has to show that the court, what? That the court needs to be able to make a determination and have a reasonable review of the case below. Well, but counsel, that's not where, I mean, that is the standard. But we have, that's the right word, detailed that standard in cases like Martin, saying that when there's this kind of mountain of post-sentencing rehabilitation evidence, what that translates to is an individualized explanation that is robust and detailed. And I had taken your argument to be that we don't have that here, but I don't want to put words in your mouth. And I guess I would like you to tell me what you think that looks like. What is it we are demanding in cases like Martin, where we say, when you've got this huge and very evidence, we want something more robust and detailed, something individualized. What do you think that requires? Well, I think it would be reasonable to be more than one sentence. You didn't get a sentence. Well, I believe it was one sentence. We're talking about while the court applies the rehabilitative efforts. That's it. That's not a sentence. It is a part of a sentence. And again, having this reverse or further consideration in a more robust way. And it's going nowhere. It will take very little effort. And our system of justice will be, it's integrity will be protected. I want to get back to the extraordinary compelling. This was not a mine run case, which I take that when this court is referring to high in cases after it, it says, this is really for your more run of the mill compassion release cases. We didn't make, Judge Niemeyer, you're correct. We didn't make a run of the mill. Although we did mention his health conditions, they would at the time would have met the CDC. And I think still those arguments hold up for the most part. But what we also mentioned for extraordinary compelling relief were the fact that there were disparate sentences at the time. There was no really variance information in the PSR. My client admittedly was an idiot at the time, beyond an idiot, and didn't participate. And so the court didn't really consider his It is rare for the court not to consider variance in the district court these days, or even back then without some kind of consideration of a variance. And the fact that this reviewing court didn't get into any of that with them, again, going back to the merits, this mountain of rehabilitation, he's been a mentor. His family has seen changed. His letter, he admits to committing the crime. There's no hemming and hawing. He's not going to try to do any post conviction 2255. He did this crime. And he is remorseful for the way he interacted with his trial attorney. But this court has seen that kind of interaction before there can be a lack of trust. My client grew up in South Central LA, in the most an environment that, respectfully, I would, I think I can presume that none of us could really imagine to immigrant parents that did not speak English. But there were multiple. The other extraordinary compelling reason that we listed were that the sentence that he received was not consistent with since we get today, people have murder sentences that are shorter than this. So there were multiple extraordinary compelling arguments that were not even given one word of breath on the order. Can I ask you about one of the few things the district court said about your client specifically? The district court said the defendant was compensated in the millions for his efforts. Are you aware of any evidence in the record that supports that statement? That he was not that he trafficked millions of dollars worth of drugs, but that he was compensated millions of dollars? I could not find it. I could not find it anywhere, Your Honor. And I, and I, you know, I can, all I have is the order. I can, I can certainly believe that there's some. Well, presumably the district court had to base that on something. Do you know where that came from? Because it wasn't referenced. And, you know, when I took this case, judge obviously had a lot of years on it and we are panel counsel. We took a lot of these cases. This is one that definitely is the one that keeps me up at night, but I could not find any reference to compensation. It sure wasn't reflected as I didn't. He wasn't a search produced over a 1.6 million, one, one particular search. I mean, this is ongoing conduct and they found at one point in time, 1.6 million. It's my understanding as from the facts, because it was a trial, we did not have an agreed statement of facts. So they kind of summarized it in the PSR, which happens after trials. But it's my understanding that there was some large amounts of cash, both from the Baltimore prong of this, which were people that lived there that received about a half to a quarter of the sentence that my client received. And there definitely was large amounts of cash, but there's, this was alleged drug organization. There's no indication that my client was ahead of this organization. The people involved in these organizations incur great risk as can be seen by the sentence. Yeah, but I was, I thought it was, it was the search in connection with the Maryland operation, not the Los Angeles and the Miami. And the amount of kilograms was extraordinary. I don't know if I've ever seen a case with so many kilograms of cocaine involved in the big picture, but I'm talking about in the Maryland structure, they found about $1.6 million in cash on a given date. I will review the record, but I also know, I guess back to the question of, does Hayden's, was my client ever compensated in that amount? I have no information that my client, there are people that mule millions of dollars worth of drugs for $1,000, a couple hundred dollars. I don't have any information to support. And that kind of goes to the reasonable, you know, the piece of discretion is that that's a fact that I could not find in the record. All right. Well, you got some rebuttal time. We'll hear from you, Mr. Medinger. Good morning, your honors. And may it please the court, Jason Medinger on behalf of the United States. Your honors, the district court here properly exercised its discretion, and we respectfully ask that this court would affirm. I'd like to jump in first with a question that was asked. Could I actually start with you with a factual question that I just wasn't able to run down? Certainly, your honor. Is there any indication that the district court reviewed the original sentencing transcript before resolving this motion? So nothing in the record to say that your honor. So I don't have any information one way or the other. What I will say for this court is the judge that decided this motion was different than the one that was the original sentencing judge. So I do want to point that out, but I don't have it either way, your honor. And similarly, do you factually do know why the original sentencing transcript does not appear to be in the record? I don't, your honor. What I do know is that these transcripts, this case was tried at a time before all the transcripts were electronically available. So I think that has mostly to do with it, your honor, that I don't think it was ever ordered previously. And when this case was being prepared, no one asked for the transcript. So you think we need to decide this case under the assumption that the district court did not review the original sentencing transcript? Well, I think under Legree and a couple of the things, we can say that there's a presumption that the district court considered all the relevant factors. But in terms of that specific question that you're asking, your honor, I just don't think we can say either way. Unfortunately, it's just not in the record. But what I will say, your honor, is I think if you look at the record here to some of the questions that Judge Niemeyer was asking, what we have is a 3553A analysis that sees this defendant as someone who is top of the charts in terms of what the offense conduct was. So if you look at his guidelines, he was given a go under 2D1.1C. It stops at 450 grams, sorry, 450 kilograms of cocaine. This gentleman was trafficking 500 to 600 kilos of it. So he was at the absolute top of what the guidelines recognize in terms of offense conduct. He was also somebody who was a manager, organizer, and leader. So we got a bump for that. His guidelines would be the same today if he were tried today. And so I guess in the government's view, there really wasn't a whole lot that was different. He certainly had mentioned COVID-related concerns, and that got him past the extraordinary and compelling circumstances threshold. But once you get into 3553A- Okay, counsel, I'm sorry. Can I just stop you there? So your understanding is that what happened in this case is that the district court found that there were extraordinary and compelling circumstances, but then denied relief under 3553A? I think the best reading is to say that the court assumed without deciding that that- Where would I find... I'm perplexed by this order because it doesn't say that. So, but you were there, or maybe you feel that from the context, that is the best reading of this order? So I do, Your Honor. And to be clear, it wasn't a proceeding. This was just a written order. Oh, right, right. So there is no context. Okay. That's fine, Your Honor. So if you look at just Joint Appendix page 329, where it is, you look at what he's discussing there, and it's all the 3553A- It looks like 3553. He's discussing the nature of the offense, but the seriousness of deterrence. And you think if the judge had found that there were not extraordinary and compelling reasons, rather than either finding that they were or assuming that there were, it would say something about that? Correct. Okay. And we have case law on that. I believe High and Jenkins were both cases where courts essentially assumed the extraordinary and compelling prong and jumped right- Sorry, there's lots of cases that do that, but the judge says, I'm assuming it, and then jumps. I'm just trying to figure out literally what happened. Right. Your Honor, I guess my report to that would be, if you look at what's there, it is singing to the 3553A factor. I agree. That reads like 3553A to me. I'm just trying to figure out what happened on extraordinary and compelling. Correct. And I guess in our view, he almost is ticking through them, A1, A2, A3. You see him going through that analysis. So I think that's the best reading of it. Well, on that front, can I ask you the same question I asked your friend on the other side? What is the best evidence in the record for the proposition that the defendant was compensated in the millions? Not that he transported in the millions, not that he even at some point had physical custody of proceeds. I mean, my understanding, limited though it may be, of how drug trafficking organizations work is that lots of cash goes through them. That doesn't mean that individual people are being compensated for all that money. So what is the best evidence for the proposition that this defendant was compensated in the millions? So the best place I would point you to, Your Honor, is Joint Appendix page 338 and 339. That's the PSR, which is what my colleague, Mr. Eisel, mentioned. That's really all we have. And all it suggests is the seizures, one that Judge Niemeyer mentioned, the $1.4 million seizure of a downstream customer, Mr. Brooks, that was at Mr. Brooks's house. But that's like if I'm a clerk at a jewelry store and the police search it and find all the money and then say I was compensated all of the money that was in the safe. That's not how employment relationships tend to work, right? So you're right on that. The one difference to the hypothetical I would mention is Mr. Gutierrez wasn't a clerk. He was an owner of this DTO. He was the right-hand man to Mr. Gonzalez, who had the contacts down to the cartels. So in my view, Mr. Gutierrez had an ownership share and all that money that was flowing into and out was- There's some sort of partnership agreement that says he gets 33% of the money? Do we have something like that? There's not. Well, compensating doesn't necessarily mean profit, does it? Compensating could be gross compensation. And it's indicative the judge was pointing out the level of the offense. And it seems to me that this man clearly had control of over a million dollars, a million plus, and it was a reasonable thing to say he was compensated, whether by his customers or by his suppliers. It doesn't matter. He had control of millions. Correct. So that is the best we have in the record, Your Honor. But I do think that's the appropriate measure. But separate and apart from the money angle to it, again, I would point back to just the kilograms upon kilograms, a bi-coastal relationship where shipping things from LA to Baltimore in these big electronic shipping containers is a large DTO. And so it's a fair inference, I think, from the record. Can I jump to the end? The district court says the public needs to be protected from the defendant. What is the evidence that supports that, particularly given that the BOP rated his risk as low? So if you look at what this defendant was doing, I think that's what the court mentioned. And it marries up to the other point that the district court made about how the drug trade in and of itself, especially of this nature, is one that leads to violence. And he was quick to point out there's no violence specific with Mr. Gutierrez. But the judge is saying in his experience, generally, violence follows from the drug trade. And this individual was involved in it at some of the highest levels. And so I think when he's talking about protection of the public, we can't have this kind of large-scale bi-coastal cartel working here. Violence is inevitably going to follow. Well, I guess, counsel, I think what you're just saying is very helpful. But I think it helps illustrate to me my concern about what said. There may be very good arguments for why this individual is different than a typical narcotics trafficker, why it doesn't make sense to give him compassionate release. But we're putting an awful lot of gloss on what the district court said. And when I read what the district court actually said, other than the words millions of dollars, and I'm not sure where that comes from, I'm hard-pressed to figure out why you couldn't give this explanation to deny compassionate release to virtually any narcotics trafficker, right? Like, what is in this other than the compensated and the millions, which I'm concerned may not be reflected in the record, what in this explanation is at all individualized and couldn't just apply to any large narcotics trafficker? Well, actually, I think it's quite individualized in the sense that we're talking about the factors that Mr. Gutierrez was involved in. Not every trafficker is involved at this ilk and this kind of level. So in that sense... No, I'm not talking about the facts of his case. I'm talking about in the district court's explanation. So he says he was a large-scale narcotics trafficker, that presumably applies to any other narcotics trafficker, responsible for putting massive amounts of narcotics on the street, that also seems to describe any narcotics trafficker. There can be no dispute that narcotics trafficking contributes to much of the death and violence occurring in this country, true of every single narcotics trafficker. He's not violent, that's bad for a not-denying compassionate release. The court applauds his rehabilitative efforts, which presumably is going to be true of everybody who did anything. Others, like the defendant, need to be deterred. That doesn't apply to anyone. That's not individualized. The public needs to be protected. That's not individualized. So I'm just concerned about what about this doesn't... Again, I'm not talking about the facts of his case. I take your point. There may be reasons why this individual is different. But when I look at what the district court said, I don't see an explanation that doesn't apply to any narcotics trafficker. So what I would respectfully disagree with a couple of the averments that you made, Your Honor, about how some of these factors would apply to every trafficker. I don't think so. There's actually traffickers that are lower-level traffickers. And I've been prosecuting narcotics crimes for a good long while. I've never gotten someone to a level 38. Typically, you have someone and they... But the district court doesn't say he's a level 38. Again, that may have been a valid reason, but the district court does not say that. Well, he said large-scale trafficker and that's all we have. But I guess what I would say, Your Honor, is to some of the points you are making, we are here on an abuse of discretion standard. And this district judge looked at these facts and said, in my view, this is how I'm going to exercise my discretion. He does not get compassionate release. And once we're into that standard of review, even if this court would say in the first instance, I would go a different way, we still have to affirm under the abuse of discretion standard. So I think that's where we are. I do want to just mention very briefly about this procedural reasonableness argument that my colleague is making. I think if you look at High and Jenkins, those cases say very expressly that the district court doesn't need to touch on every argument that's being made by the defendant. And so I think that forecloses this idea that there has to be large-scale discussion of every COVID argument that he's that there's no sort of requirement of large-scale discussion of every argument he's making. I am a little bit troubled that there's no reference at all to COVID and conditions of COVID, both sort of a prisoner's risk as to COVID, but also that the conditions of confinement change as a result of COVID. And I think we've said in a couple of cases that when a district court does the 3553A factors, you need to sort of account for COVID in that analysis. We did say in High that there are cases where we can just sort of infer that that consideration took place. Are you saying this is one of those cases? I think it is. And I think I would go back to High. High, I think, is very close to this case in terms of what was said. I think in the Jenkins case, this court described the High decision as simply a paragraph, and we affirmed in High. And here, you have a very similar response from the district court. Yeah, but it doesn't mention COVID, and this does go back to my concern about whatever happened to extraordinary and compelling circumstances. I think one of, because we don't have any, because the defendant raised those mostly in that context, and because the district court never said anything about what was happening over on the extraordinary and compelling circumstances side, I find it harder to kind of just infer, well, what happened was he understood the COVID risk, he assumed that that was important. We just don't have anything indicating any kind of attention to the COVID issue. Understood, Your Honor, but I don't think it should trouble you, and here's why. Under any analysis, this defendant has to meet first extraordinary and compelling, he's got to exhaust, then he's got to get through 3553A factors. So there's three prongs that he needs to win on. If he doesn't win on one, game over. No, I understand that, but the COVID is supposed to be taken into account even if the district court is just deciding this on 3553A grounds. We can infer that that happened if there's some discussion of extraordinary and indicate I was paying attention to COVID over there, but there's just nothing anywhere about COVID in this order, and that's my concern. So there's not, Your Honor, but I guess in my view, if you could look at High and Jenkins, I don't think he has to if these other factors are discussed and they move the needle and such that he doesn't make it under 3553A. The other thing that I'll just mention, Your Honor, is I think if you look at Joint Appendix page 36, that is the initial motion for compassionate release that was raised by the defendant. That's where he discusses the 3553A factors. And if you look at the district court's response to that, it's responding to the 3553A arguments that were made by the defendant. So in other words, my point is I think it's clear that the district court said, I'm going to grant you that you meet the extraordinary and compelling prong. Now I'm going to focus in on what you raised as the 3553A factors, and I'm responding to them in my order, which is what he did. And if you look at it, it's a very short discussion that Mr. Gutierrez makes on 3553A, and so the district court responded to that, again, in a very short order that looked at all the factors. So I think what you have here is enough, as Judge Niemeyer said, to look at it and see what the district judge was doing and what he was thinking. And I don't think there's any reason to send it back. We also made a harmless error argument. Before we get to that, can I just ask you about the Martin line of cases, the cases about the post-sentencing rehabilitation evidence? Because I do take your point that the facts of this offense are very unusual. On the other side of the balance, this does seem like an unusually significant amount of post-sentencing rehabilitation evidence. I'm not sure I've actually seen anything quite like this. And we have said, you know, it's everything from getting an associate's degree, he's learned these trades, he's a teacher, he's a mentor, no infractions in 17 years. As Judge Heitens pointed out, the Bureau of Prisons itself says he is at a low risk of recidivism, which is something I might have expected the district court to address when he says, I think that's wrong, basically. I think the public needs to be protected from him going forward. I disagree with BOP. You know, we say in cases like Martin that when you have that kind of a mountain of evidence, we are looking for an individualized explanation that grapples with that evidence, a robust and detailed explanation. And how do we have that here? So, two things I would say. I don't see any, I guess I just follow on. I share Judge Heitens' concern that this clause, like, oh, I applaud your efforts at rehabilitation, could have said that about anyone who's taken like one high school class in prison. That's my concern. Thank you, Your Honor. So, two things that I would say to that. One, if you look at the high I think Mr. Gutierrez ranks up close to that individual. There was some discussion in High about how the gentleman, you know, got his GED in prison and had done some vocational training. I haven't looked at it and cataloged it, you know, who took how many courses, but I think in the opinion, Mr. Gutierrez is not completely dissimilar from Mr. High. Really? The second thing I would say is, you know, we're here on abuse of discretion. And so, this judge said, I applaud the fact that you've availed yourself of certain programming, but that still just isn't going to outweigh what you did. You know, you engaged in this large-scale trafficking. You did a flesh and blood defense at trial, basically. I'm sorry, is this the High case you're talking about? This is this case, Your Honor. This report didn't say that. The flesh and blood, what? It's not in the opinion, but I'm talking about this individual. But I'm talking about the explanation we have. So, I was genuinely confused. I thought maybe I was looking at the wrong case. Understood. Okay. So, in any event, I think this judge is looking at the conduct and saying, I appreciate the programming that you've engaged in. That is great. That is what we hope folks do. But it still doesn't outweigh what you did. And that's an exercise of discretion that I think if we were to reverse that, we would be robbing the district court of the discretion with which they're vested. No, we wouldn't. We'd be saying, you have the discretion. You just have to actually provide an individualized explanation in this case. Right? And I guess where I'm disagreeing with that is I think he did. And he said, this is how I'm exercising my discretion, and this is why I'm doing it. And so, we think that that is sufficient here, especially on this record, and especially considering this court's precedence. I'll just mention briefly that we did raise a harmless error argument. So, despite the idea that we would like a more fulsome opinion, we would always like more fulsome opinions. But if you look at this record, it's clear that it's not an abuse of discretion to deny relief here. So, we cited a case, the Santana case, where a court said, yes, there was some procedural error, but we're still going to affirm. So, we would respectfully ask under any of those prongs that this court would affirm. And if there's no further questions, I'll cede the rest of my time. Thank you, Mr. Mantegna. Thank you, Your Honor. Mr. Heisel. Thank you, Judge. I just wanted to pick up one of the points that Judge Harris made, and how the extraordinary and compelling reason for relief sort of flows into the 35-50-day factors. And again, as Your Honors know, these things were coming at a breakneck speed in the panel. We handled so many of these, and this was a more meaty one. And the extraordinary and compelling arguments in this were three to five-fold dealing with, and we argued it was a combination of factors, not, and I think Judge Niemeyer picked up on this. This was not just a COVID conditions, although we were explicit in listing what exposed him. We talked about the fact, very unique things, different from McCoy, but McCoy is still the law. And so, when we talked about the fact that, for example, it didn't seem that, well, we know the trial court didn't seem like they had all the information about his original upbringing, growing up in South Central LA, exposed to all this violence, because my client was an idiot at the time. The fact that there were disparity among co-defendants of the sentences. The fact, as Your Honor mentioned, horrific conditions due to COVID. These are all relevant factors, and they all flow into the 35-50-3A factors. From a stylistic standpoint, should there be a sentence that said all these matter for 35-50-3A, that maybe could have done a better job. But I think they're all relevant because they impact the overall decision whether or not this is extraordinary and compelling reasons. Is it your position that we should review the original sentence? I mean, those arguments seem to focus on the original sentence. No, Your Honor. I'm not asking to... I'm asking for another... I mean, you talked about the disparity and so forth. Of course, his guideline, what his guideline was life imprisonment. That's correct, Your Honor.  I understand. But my question is, is part of the analysis require us to go back and decide whether he was properly sentenced in the first place? I think part of the analysis is for the district court to meaningfully review what we argued to the district court. And that's all we're asking. We're not asking to burden anyone. The court could very easily say, I'll tell you what I was thinking. Let me expand upon it. That's all that we are asking. And there is no one harmed by the request. We're not getting into as Judge Hayden described, we're not impeding abusive discretion. If anything, we're allowing the court to expand and add more faith into the system by giving an order that's more than one paragraph double spaced. And the argument was taken from me by the Judge Hayden before, you can hold that order up to any case and you would not be able to determine whether or not, unfortunately, the district court even read the many substantive arguments in our motion reply. It's just not there. And one of the last things I would like to point out is that procedure directs substance. And that's why this court has been clear that it's so important that the district courts explain their orders. I'm not asking for a fine tooth comb in this case. I'm just asking for a comb. Just an acknowledgement as these arguments that are made. And so that's all that we're really talking about here. We're not asking the court to get into the weeds of the substance. Of course, it's there. I mean, I can't hide it. I echo Judge Harris sentiments. I have not seen this kind of rehabilitation, mainly the length of time that is taken, the amount of rehabilitation that he's done is so dissimilar to the high case. And I've exhausted that in reply brief, but there is almost no similarities. And I think the conceptual case in this court's previous cases, in the first act context, I think was the McDonnell maybe in the other cases. There's no reason to veer from that. I think that the high case can't tell this court that procedure doesn't matter because in my view of the case law, it would change precedent and we would need an en banc decision. And so again, we're not trying to get the court to the merits. We would just like a court order that reasonably addresses our arguments in good faith and procedure matters. And we mentioned the Mitchell case with the same district court. This court reversed that and the court, I checked on it, changed direction and granted compassionate release. And so the importance of procedure is maybe the district court didn't see it. Give the district court an opportunity to review things that maybe it missed because it didn't follow the procedure because that's what happens. If you don't review things sufficiently and you get a second chance, you could very easily change your mind. And so we're asking not buying the district court, but free it up under our current precedent. We thank you. All right. Thank you, Mr. Faisal. I notice you're court appointed. Yes, Your Honor. And I want to recognize that this is a very, very important role. And of course, it makes our system special and you've done a fine job. And I want to thank you for that. Our normal practice would be now to come down and greet counsel. And we're still under many of our COVID restrictions and we've retained that one. So we won't come down this time, but I promise you the next time you come, we'll come down and shake your hand and greet you and welcome you. And maybe even remember your attendance here today. Thank you very much. We'll proceed on to the next case.
judges: Paul V. Niemeyer, Pamela A. Harris, Toby J. Heytens